IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Louis T. Bauer, et al., | Case No. 3:16 CV 722 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| City of Rossford, | |
| Defendant. | |

## INTRODUCTION

This case resembles a game of whack-a-mole. After a year of litigation and an adverse summary judgment ruling, Plaintiffs now seek to amend their Complaint a second time to raise an entirely new legal theory (Docs. 33–34, 41). An overview of the procedural history of this case is helpful to an understanding of whether another leave to amend is appropriate.

## BACKGROUND

*Original Complaint*. Plaintiffs filed their Complaint in March 2016 -- more than a year ago (Doc. 1). The thrust of the Complaint was that the City of Rossford illegally destroyed Plaintiffs' property, based on a demolition order that, in turn, was based on an invalid settlement agreement (*id.*). Bauer was allegedly arrested for "protesting the demolition of his own house," and police officers told him they would "accompany him to City Council Chambers" if he decided to go to the City Council meeting that evening (*id.* at ¶¶ 27–28). According to Bauer, this "prevent[ed] him (again) from being

heard regarding the wrongful demolition of his property and den[ied] him his First Amendment and Due Process rights" (*id.* at ¶ 28).

The Complaint enumerated five claims against the City for: (1) an illegal taking in violation of the Fifth Amendment; (2) deprivation of procedural due process under the Fourteenth Amendment; (3) violation of the Fourth Amendment's guarantee against unreasonable searches and seizures; (4) demolition of property without notice under Ohio law; and (5) wrongful demolition (*id.* at ¶¶ 31–53). The wrongful demolition claim was also brought against the City's contractor, Competitive Hauling, Inc. (*id.* at ¶¶ 51–53).

The City answered in April 2016, and this Court held a status conference in June. At that conference, the City argued there was no legal basis for the Complaint's first, fourth, and fifth claims. This Court ordered counsel to exchange authorities concerning the arguments raised by the City (Doc. 6). A few weeks later, Plaintiffs requested leave to amend the Complaint to address the City's arguments. That request was granted (Doc. 10). Plaintiffs also acknowledged that the facts relevant to their Amended Complaint were not in dispute. Both parties then agreed to submit the legal issues for this Court to decide on cross motions for summary judgment.

*Amended Complaint.* The Amended Complaint lists the City as the only Defendant, and it enumerates claims for violation of: (1) procedural due process under the Fourteenth Amendment; (2) the right to be free from unreasonable searches and seizures under the Fourth Amendment; and (3) the freedom of speech under the First Amendment (Doc. 11 at ¶¶ 29–40). With respect to the Fourth Amendment claim, the Amended Complaint states -- in conclusory fashion -- that "the actions and inactions of the City as alleged herein constitute a denial of Plaintiffs' right to be free from unlawful searches and seizures, and are contrary to the Fourth Amendment of the United States Constitution"

(*id.* at ¶ 34). Plaintiffs explained the theory underlying that claim as follows: "[T]here was no valid order for the demolition. In addition, there was no valid settlement agreement to provide a basis for the demolition and the related police presence to enforce it. As such, the police officers were essentially sent to enforce an invalid civil settlement agreement" (*id.* at ¶ 25). Notably, the Amended Complaint makes no mention of the term "probable cause." And to the extent a lack of probable cause for arrest is implied, the only factual basis alleged is the purportedly invalid demolition order.

*Summary Judgment*. On August 11, the parties jointly submitted Stipulations of Fact to be used by this Court in deciding cross motions for summary judgment (Doc. 13). In a status conference with this Court (Doc. 14), the parties also agreed that the threshold issue of the settlement agreement's validity would likely be case dispositive. The parties briefed summary judgment motions (Docs. 15–17, 19–21), and this Court held a record hearing on October 14 (Doc. 22). At this Court's request, the parties submitted additional briefing on an issue raised by Plaintiffs (Docs. 23–24). On November 4, this Court granted the City's Motion and denied Plaintiffs' Motion, holding both that the settlement agreement was valid and that Plaintiffs' due process claim failed in any event (Doc. 25).

Following the summary judgment ruling, this Court held another status conference. At that conference, Plaintiffs requested two weeks to evaluate what remained of their First and Fourth Amendment claims in light of this Court's ruling. That request was granted, and this Court scheduled a further status conference for the following month (Doc. 26). At that time, despite having nearly a month to consider the implications of this Court's ruling, Plaintiffs still were unable to articulate a basis for proceeding with their First and Fourth Amendment claims. Instead, they sought further discovery to supplement the record and more time to consult with a criminal lawyer to determine the viability of a Fourth Amendment claim. This Court granted Plaintiffs an additional three weeks (*id.*).

3

*Proposed New Complaint*. On December 27, Plaintiffs filed a Motion to Supplement Record, asking to re-open discovery and briefing on the issues resolved by summary judgment (Doc. 27). This Court denied Plaintiffs' Motion and gave Plaintiffs two weeks to advise whether they had any remaining claims (Doc. 30). At a status conference on January 18, 2017, Plaintiffs reported they reviewed some legal authority suggesting the police may not enforce a civil contract, and they stated their intention to proceed with their Fourth Amendment claims on that basis. This Court ordered counsel to exchange the relevant authorities and discuss the merits of moving forward.

The following week, Plaintiffs requested leave to depose the arresting officers to assist in determining the validity of their Fourth Amendment claim (Doc. 31). Over the City's objection, this Court granted Plaintiffs' request (*id.*). Following those depositions, Plaintiffs announced they wanted to proceed with their Fourth Amendment claim on a new basis: the officers lacked probable cause to arrest Bauer. This Court pointed out that the pending Complaint makes no reference to "probable cause." Accordingly, this Court suggested Plaintiffs may not have adequately pled that as a basis for holding the City liable (Doc. 32). Plaintiffs requested and were given until March 10 to seek leave to amend to cure any deficiencies in their Amended Complaint (*id.*).

Plaintiffs then filed a proposed Second Amended Complaint that -- for the first time -- mentions probable cause (Doc. 34-1). Plaintiffs argue there is no need to amend because their First Amended Complaint adequately pleads First and Fourth Amendment claims. Alternatively, to the extent this Court disagrees, they seek leave to amend (Docs. 33–34). The City opposes the Motion (Doc. 41), arguing: (1) the officers had probable cause to arrest Bauer; (2) Plaintiffs were previously afforded an opportunity to amend; (3) Plaintiffs have caused undue delay and appear to have dilatory motives; (4) the City did not have notice of Plaintiffs' probable cause argument; (5) the City will be

4

prejudiced if Plaintiffs are permitted to amend their Complaint again; and (6) Plaintiffs have not properly pled a Fourth Amendment claim for false arrest.

## LEGAL STANDARDS

Federal Civil Rule 15(a)(2) instructs that this Court "should freely give leave [to amend] when justice so requires." But leave may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (emphasis removed) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "a party must act with due diligence if it intends to take advantage of [Rule 15(a)(2)'s] liberality." *Detrick v. Heidtman Steel Prods., Inc.*, 2017 WL 360552, at *5 (6th Cir. 2017) (quoting *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)).

This Court has discretion to deny leave to amend following summary judgment. *Riverview Health Institute LLC*, 601 F.3d at 521. In fact, the Sixth Circuit -- on several occasions -- has upheld a district court's decision to deny leave following dispositive motion practice. *See, e.g.*, *Hiller v. HSBC Fin. Corp.*, 589 F. App'x 320, 321 (6th Cir. 2015) (upholding denial of leave to amend after cross motions were briefed and argued); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458–59 (6th Cir. 2013) ("[A]llowing amendment under these circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint."); *Kelso v. City of Toledo*, 77 F. App'x 826, 834 (6th Cir. 2003) ("The Kelsos offer no explanation why the district court abused its discretion in denying them leave to file this amendment after summary judgment, and no reasons can be gleaned from the record. The Kelsos

were well aware of these individuals' involvement . . . long before the parties filed their summary judgment papers.").

This principle also has been affirmed by federal circuits around the country, often citing the reasoning articulated by the Fifth Circuit in *Freeman v. Continental Gin Co.*:

> A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation. . . . Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

381 F.2d 459, 469–70 (5th Cir. 1967) (quotations and citations omitted); *see, e.g.*, *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994); *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990); *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990); *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986); *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1196–97 (7th Cir. 1985); *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630, 635 (Fed. Cir. 1985); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2712 (4th ed. 2017) ("A litigant cannot amend as a matter of right under Rule 15(a) after a summary judgment has been rendered and a court ordinarily will be reluctant to allow leave to amend to a party against whom summary judgment has been entered." (footnotes omitted)).

## ANALYSIS

Granting Plaintiffs leave to amend their Complaint a second time -- more than a year after they filed their original Complaint, almost nine months after they last amended their Complaint, and almost five months after this Court granted Defendants' Motion for Summary Judgment -- would be inequitable and would unduly prejudice Defendants. Granting leave to amend would also be futile, because Plaintiffs' proposed Second Amended Complaint still fails to state a plausible First or Fourth Amendment claim against *the City* -- the only named Defendant.

Plaintiffs were aware of the circumstances surrounding Bauer's arrest when they filed their original Complaint. In fact, the original Complaint references both arresting officers (Doc. 1 at ¶ 22). Bauer now contends his conduct was insufficient to give the officers probable cause to arrest him, but he fails to explain how he only became aware of those facts after deposing the officers (Doc. 34 at 4). Bauer was there; he therefore knew all he needed to know to determine whether his conduct met the legal standard for arrest. He also knew all he needed to know about whether his First Amendment rights were violated.

Plaintiffs offer only one explanation for why they failed to previously allege more details concerning the factual bases of their claims -- they do not think it was necessary. They are wrong. It is true a complaint need only contain a "short and plain statement of the claim," and it need not contain "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2)). Nevertheless, stating a plausible claim requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 679. Rather, Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads

7

facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs' own characterization of the Amended Complaint's Fourth Amendment allegations demonstrates their failure to satisfy the *Iqbal/Twombly* standard: "In this case, Plaintiff's Amended Complaint states that Mr. Bauer was arrested and that his rights to be free from unlawful searches and seizures were violated. He has therefore pleaded a plausible and viable Fourth Amendment claim based on lack of probable cause" (Doc. 34 at 6). That is nothing more than an "unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* It is not enough to state that Bauer was arrested and that his arrest was illegal. A plausible claim based on a lack of probable cause must -- at a minimum -- allege *facts suggesting there was no probable cause*. The Amended Complaint is silent as to Bauer's conduct other than to say he "was arrested for protesting the demolition of his own house" (Doc. 11 at ¶ 26).

Instead, the Amended Complaint focuses solely on Plaintiffs' theory that the police should not have been sent to help enforce an invalid demolition order. That is the only factual circumstance outlined in the Amended Complaint that even remotely approaches adequate notice of a theory underlying Plaintiffs' Fourth Amendment claims. But, as Defendants correctly point out (Doc. 41 at 10), the Amended Complaint could not have given them adequate notice of Plaintiffs' current probable cause theory, because it appears Plaintiffs did not even know it was their theory. Indeed, it took Plaintiffs months -- in addition to significant prodding from this Court -- before they were able to articulate that theory.

Plaintiffs' First Amendment claims are similarly deficient. The Amended Complaint provides nothing more than conclusory allegations of a First Amendment violation. Plaintiffs again plead no

8

*facts* allowing this Court to draw the reasonable inference that the officers arrested Bauer for exercising his First Amendment rights -- Plaintiffs allege neither that the police lacked probable cause to arrest Bauer nor that their decision was in any way motivated by his protected speech. On the contrary, Plaintiffs allege the officers were instructed to "keep the peace," "make sure there were no problems during the demolition," and "arrest Bauer for obstructing official business if he gets in the way of contractors while they were demolishing" (Doc. 11 at ¶¶ 21–24). On its face, the Amended Complaint fails to suggest the officers wanted to limit Bauer's ability to lawfully protest. Likewise, Bauer's assertion that the officers told him they would accompany him to the City Council meeting does not plausibly suggest a First Amendment violation. Bauer does not allege the officers told him he would not be allowed to speak at the meeting or that he otherwise would be prohibited from lawfully protesting the destruction of his home. In short, the Amended Complaint fails to state a plausible claim under either the First or Fourth Amendment.

But even if this Court were to assume Plaintiffs had adequately alleged that one or more of *the officers* violated Bauer's constitutional rights, the Amended Complaint would still be deficient because it fails to allege facts (much less a legal theory) leading to an inference that *the City* is liable for those officers' conduct. "It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015). To state a claim against a municipality, Plaintiffs must show "the alleged federal violation occurred because of a municipal policy or custom." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401–02 (6th Cir. 2016). Moreover, Plaintiffs must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Baynes*, 799 F.3d at 621 (quoting *Fair v. Franklin Cty., Ohio*, 215 F.3d 1325 (6th Cir. 2000) (table decision)).

Plaintiffs plead no facts concerning any "official policy or custom" of the City that could plausibly be responsible for Bauer's allegedly unlawful arrest. All they offer is the bare allegation that the officers "were asked by Chief Goss to make [sure] that there were no problems during the demolition" (Doc. 11 at ¶ 22). This allegation does not plausibly suggest the City is liable for the officers' decision to arrest Bauer based on unspecified conduct at the demolition site. In sum, the Amended Complaint falls far short of providing the City adequate notice of the factual and legal bases for Plaintiffs' claims.

And the proposed Second Amended Complaint fares no better. Although the proposed Complaint adds minimal clarity with respect to the legal theories Plaintiffs intend to pursue (*see* Doc. 34-1 at ¶¶ 34, 38), it fails to address the factual bases underlying those theories. Moreover, the proposed Complaint adds nothing with respect to whether the City may be held liable for the officers' alleged constitutional violations. Thus, granting Plaintiffs leave to file the proposed Second Amended Complaint would be futile.

## CONCLUSION

This Court is not persuaded by Plaintiffs' recently hatched theory of the case. This case has always been about the allegedly invalid settlement agreement. That is what the parties agreed when the issues were first presented to this Court on cross motions for summary judgment. Plaintiffs may disagree with this Court's ruling on the settlement and, if so, their remedy is to pursue an appeal. They are not permitted to keep tossing up legal theories, hoping one will eventually stick. As one court remarked:

> [It] is inequitable to Defendants to force them to chase Plaintiffs down blind legal alleys while Plaintiffs search for one leading to their desired destination. Rather, Plaintiffs must put their best legal foot forward, and the Court is under no obligation to permit them to test-drive various potential causes of action, using the defendant's responsive motion practice and the Court's opinions as a kind of roadmap in an effort to find a meritorious claim. "Plaintiffs must exercise due diligence in amending their complaints. As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well."

*In re Keithley Instruments, Inc. Derivative Litigation*, 599 F. Supp. 2d 908, 916 (N.D. Ohio 2009) (quoting *Aponte-Torres*, 445 F.3d at 58).

This Court finds that Plaintiffs have not provided a sufficient explanation for why they should be granted leave to amend at this stage of the litigation. Plaintiffs have unduly delayed these proceedings, and this latest request to amend will prejudice the City. Further, this Court finds that granting leave to amend would be futile because the proposed Second Amended Complaint fails to state a plausible claim against the City. Plaintiffs' Motion to Amend is denied.

IT IS SO ORDERED.

                                         s/ *Jack Zouhary*
                                     JACK ZOUHARY
                                     U. S. DISTRICT JUDGE

March 30, 2017